THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARENCE FAULKNER *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 78-286

Opinion filed July 1, 1980.

Sam Adam, of Chicago, for appellant Clarence Faulkner.

Frederick N. Aiossa, of Chicago (Douglas K. Morrison, of counsel), for appellant Richard Ford.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Pamela L. Gray, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendants, Clarence Faulkner and Richard Ford, were charged by indictment with rape, robbery, and aggravated kidnapping. After a bench trial, defendants were found guilty of rape and aggravated kidnapping. Both received sentences of 12 to 18 years. On appeal this court is asked to consider (1) whether the trial court erred when it denied Faulkner's motion to suppress identification testimony; (2) whether the trial court erred when it permitted admission of an exhibit absent necessary foundation testimony; (3) whether defendants' court-appointed attorneys failed to provide effective assistance; (4) whether defendants were proved guilty beyond a reasonable doubt; and (5) whether the trial court imposed upon Ford an excessive sentence.

Ford and Faulkner were arrested pursuant to warrants issued after complainant filed complaints alleging defendants had raped her on May 4, 1975. Prior to trial, Faulkner filed a motion to suppress identification testimony. Complainant previously identified Faulkner at a lineup. Although the lineup occurred after his arrest, no attorney was present. The trial court denied Faulkner's motion.

During trial complainant testified that on May 4, 1975, a Sunday, she was walking east on Chicago Avenue near the intersection of Larrabee. It was approximately 6:30 a.m. She was going to church. Complainant noticed that a car with two male occupants was following her. The car was green with a black top. As she increased her gait the car kept pace. She headed toward a friend's home, but just as she reached the steps of that building, the former occupants of the car grabbed her from either side. She identified Ford as having told her not to scream. She identified Faulkner as having said he would kill her if she did. They dragged her into their car.

Defendants tied a handkerchief in blindfold fashion over her eyes, drove her to an apartment building, and then dragged her to a studio

apartment. Once inside the apartment, Faulkner removed the blindfold, threatened complainant's life, and raped her. She could clearly see her assailant's face throughout the 30-minute episode. Complainant testified further that Ford sat in a chair watching the attack until Faulkner removed himself from atop her and told Ford, "She's yours." Ford then raped her. Complainant looked at Ford's face throughout the one-hour ordeal. After she was permitted to dress herself, defendants again blindfolded her and returned her to Chicago Avenue.

Complainant's mother testified that on May 4, her daughter returned from church later than usual and cried repeatedly, "I've been raped."

Robert Gerwig, a Chicago police officer, testified that on July 9, 1975, he and two other officers were investigating a robbery which involved a green and black Mercury automobile. The officers saw such a car parked in front of a house on North Ridgeway, Chicago. Faulkner left that house, approached the officers, and after a brief discussion gave them the keys to the car which they drove to a police station.

Betty Faulkner testified as an alibi witness for her husband. She stated that on May 4 she was confined to her bed while she recuperated from surgery. Defendant Faulkner had fallen asleep late the night before and arose earlier than she to prepare breakfast for their four children. She awoke at about 11:30 that morning.

Defendant Faulkner was the last witness to testify. He denied any participation in the charged offenses. He stated he was at his home during May 4. He also stated he owned a "black over green Mercury." In addition, Ford and he knew each other socially.

It was stipulated that Dr. Thornton examined complainant at Cook County Hospital on May 4, and he found neither evidence of sperm nor trauma requiring surgical correction.

At the conclusion of the evidence, defendants moved for directed findings in their favor. The trial court denied those motions and after argument of counsel found defendants guilty of rape and aggravated kidnapping. Motions for new trials were denied. The trial court then recited the nature of the crimes, the relevant criminal records of defendants, and their opportunity for rehabilitation. It concluded that defendants should be removed from the community for a considerable length of time and sentenced them accordingly.

## I.

### A.

Faulkner first contends the trial court erred when it denied his motion to suppress identification testimony.[1] He contends that his constitutional

---

[1] Ford's appellate brief does not directly address the issue of the trial court's denial of his motion to suppress. He does adopt any and all applicable arguments advanced by Faulkner. The instant issue does not apply to Ford.

right to have counsel present during a lineup identification was activated by his arrest pursuant to a judicially issued warrant. In the absence of counsel, he concludes, any identification testimony resulting from the lineup should have been suppressed.[2] We agree.

■■ After Faulkner was charged by complaint with rape, he was entitled to counsel. (*Kirby v. Illinois* (1972), 406 U.S. 682, 688-89, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877; *People v. Giovanetti* (1979), 70 Ill. App. 3d 275, 282, 387 N.E.2d 107, *appeal denied* (1979), 79 Ill. 2d 614.) Testimony regarding a lineup identification in violation of that entitlement is prohibited under *Gilbert v. California* (1967), 388 U.S. 263, 273, 18 L. Ed. 2d 1178, 1186, 87 S. Ct. 1951. Therefore, defendant's motion to suppress such testimony should have been granted.

## B.

■■ Faulkner also contends complainant's in-court identification testimony was constitutionally impermissible. We disagree. In-court identification testimony by a witness to an illegal lineup identification may be admitted if the in-court identification has an "independent source." (*Gilbert v. California* (1967), 388 U.S. 263, 272, 18 L. Ed. 2d 1178, 1186, 87 S. Ct. 1951.) A determination of an "independent source" requires consideration of several factors: the opportunity to view; the degree of attention; the accuracy of the description; the witness' level of certainty; and the time between the crime and the confrontation.[3] (See generally *Manson v. Brathwaite* (1977), 432 U.S. 98, 114-15, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243; *United States v. Wade* (1967), 388 U.S. 218, 241, 18 L. Ed. 2d 1149, 1165, 87 S. Ct. 1926.) We believe the instant record, in the light of these factors, clearly indicates complainant arrived at her in-court identification independently, as a matter of law, from the illegal lineup. See, *e.g., People v. Connolly* (1973), 55 Ill. 2d 421, 427, 303 N.E.2d 409; *People v. Giovanetti* (1979), 70 Ill. App. 3d 275, 283.

## II.

■■ Defendants claim the trial court erred when it admitted into evidence, over objection, a certified copy of Faulkner's application for a

---

[2] We reject the State's claim that Faulkner waived this issue. Although Faulkner's form motion to suppress was in several respects vague, it clearly invoked the constitutional right to counsel during the lineup identification by citing two fundamental cases applicable to that issue: *United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, and *Gilbert v. California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951. Faulkner's post-trial motion for a new trial was based, in part, upon a claim that the trial court erred in denying his motion to suppress. The issue was therefore preserved for review.

[3] These factors may also be applied to Faulkner's argument, by implication, that the lineup constituted a due process violation. (See generally *Neil v. Biggers* (1972), 409 U.S. 188, 199-200, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375; *Stovall v. Denno* (1967), 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967.) Under the instant facts our analysis of the totality of circumstances compels the conclusion that no such violation is present.

1975 automobile license plate for his 1969 Mercury car. No foundation testimony was adduced. Although we conclude that it was error to admit this evidence, the error was harmless for three reasons. First, the presumption that the trial court considered only competent evidence (*People v. Rodgers* (1978), 58 Ill. App. 3d 719, 724, 374 N.E.2d 721) is not rebutted by the record. Second, Faulkner admitted during cross-examination that he owned a "black over green Mercury." Third, defense counsel attempted to use the fact that Faulkner owned a Mercury, rather than a "Buick 225," as evidence supporting their defense theory of misidentification.[4] Admission of the document was not reversible error.

■ Ford also contends, in connection with Faulkner's ownership of the car, that Officer Gerwig's testimony contained an impermissible "reference to other crimes" which prejudiced Ford's case. "Evidence which tends to prove a fact in issue is admissible though it may be evidence showing that the accused has committed a crime other than the one for which he is being tried, and evidence which goes to show * * * identity * * * is admissible though it may show the commission of a separate offense." (*People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489.) Gerwig's testimony was probative on the issue of Faulkner's ownership of a car similar to the one described by complainant. Thus, it was admissible to show ownership and control of the vehicle, as well as identity. It was therefore admissible even though it may have suggested Ford associated with one whose car was the subject of a criminal investigation.

### III.

Defendants next contend they were denied the constitutional guarantee of effective assistance of counsel. They cite the following five examples as illustrative of their claim: defendants were permitted by counsel to waive their right to a jury prior to the hearing on their motions to suppress; counsel failed to object to complainant's testimony that she recognized Faulkner's picture in a "mug book"; counsel failed to object to complainant's lineup identification testimony; complainant viewed pictures of the lineup while testifying thereto without objection; and defense counsel failed to aggressively cross-examine complainant's mother. Defendants argue that these examples, in the aggregate, compel reversal.

■■■ The law is clear that a conviction will not be reversed on the ground of incompetent court-appointed counsel unless defendants "establish (1) actual incompetence and (2) substantial prejudice resulting therefrom.

---

[4] Complainant testified that she thought the model of the assailants' car was a "Buick 225."

[Citations.] Proof of prejudice cannot be based on mere conjecture [citations] nor can a defendant rely upon speculation as to the outcome of his case had the representation been of higher quality [citations]." (*People v. Hills* (1980), 78 Ill. 2d 500, 505-06, 401 N.E.2d 523.) Defendants have failed to establish either necessary element. Our review of the record indicates that each example constitutes counsel's exercise of judgment, discretion, or trial strategy. Our review of competency does not extend to those areas. (*People v. Newell* (1971), 48 Ill. 2d 382, 387, 268 N.E.2d 17; *People v. Monreal* (1976), 42 Ill. App. 3d 842, 846, 356 N.E.2d 921.) Even if we were to assume that the cited examples, in the aggregate, established actual incompetence, defendants have failed to show the trial court considered incompetent evidence. (See generally *People v. Rodgers*.) Thus, defendants fail to establish substantial prejudice arising from that representation.

## IV.

Defendants also claim the State failed to prove them guilty of the crimes charged beyond a reasonable doubt. They claim that absent the lineup identification of Faulkner, and excluding all arguably inadmissible evidence, the trier of fact was faced with evidence so improbable as to raise a reasonable doubt. See generally *People v. Stringer* (1972), 52 Ill. 2d 564, 568, 289 N.E.2d 631.

Complainant viewed her assailants under conditions conducive to a positive identification. She identified Ford and Faulkner in court as those assailants. Although she described the vehicle her assailants used as a Buick, and Faulkner owns a Mercury, complainant correctly identified the color scheme of Faulkner's car. "[W]here the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made." *People v. Stringer* (1972), 52 Ill. 2d 564, 569.

Furthermore, other discrepancies cited by defendants do not compel reversal. "A reviewing court may not substitute its judgment for that of the trier of fact 'on questions involving the weight of the evidence or the credibility of the witnesses * * *.' " (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) Therefore, in the absence of evidence so improbable as to raise a reasonable doubt of guilt, defendants' convictions are affirmed.

## V.

Finally, Ford claims his sentence is excessive. There is no contention,

however, that the trial court applied improper factors in sentencing Ford. In fact, the record discloses the trial court considered all relevant factors. (See generally *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) That court also considered defendant's history of criminal activity and the nature of the crime giving rise to his conviction. In the light of these latter factors, we cannot say the trial court abused its discretion.[5] Accordingly, Ford's sentence is affirmed. See *People v. Lykins* (1979), 77 Ill. 2d 35, 40, 394 N.E.2d 1182.

The judgment of the circuit court of Cook County as to each defendant is affirmed.

Affirmed.

STAMOS and HARTMAN, JJ., concur.

---

[5] We note that at least two recent appellate court decisions have interpreted and applied a different standard in their review of sentences. (See *People v. Cox* (1979), 77 Ill. App. 3d 59, 63, 396 N.E.2d 59, *appeal allowed* (1980), 79 Ill. 2d 627 (presumption that trial court imposed proper sentence may be rebutted on appeal if defendant affirmatively shows a sentencing error); *People v. Choate* (1979), 71 Ill. App. 3d 267, 273, 389 N.E.2d 670 (same).) The "rebuttable presumption" standard of sentencing review is set forth in section 5—5—4.1 of the new Illinois sentencing act (Ill. Rev. Stat. 1977, ch. 38, par. 1005—5—4.1), effective February 1, 1978. Ford was sentenced prior to the effective date of that act. Although we believe Ford's sentence is properly reviewed pursuant to the "abuse of discretion" standard clearly applicable to review of sentences imposed before the new act's effective date, our review of the instant record in the light of *Cox* and *Choate* compels the conclusion that Ford has failed to affirmatively demonstrate sufficient sentencing error to rebut the presumption of a properly imposed sentence.