Paul AUCLAIR, Appellant (Defendant),

v.

STATE of Wyoming, Appellee (Plaintiff).

No. 5775.

Supreme Court of Wyoming.

March 21, 1983.

Sylvia Lee Hackl, State Public Defender, Gerald M. Gallivan, Director, Wyo. Defender Aid Program; Laramie, and Kurt C. Weiss, Intern (argued), signed the brief on behalf of appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Allen C. Johnson, Senior Asst. Atty. Gen., and Thomas T.C. Campbell, Intern (argued), signed the brief on behalf of appellee.

Before ROONEY, C.J., and RAPER, THOMAS, ROSE and BROWN, JJ.

RAPER, Justice.

Paul Auclair (appellant) was found guilty by a jury and sentenced on three criminal counts [1] arising from an incestuous relationship he engaged in with his thirteen year-old daughter. During the trial the transcript of a recorded telephone conversation between appellant and his daughter, held before appellant was arrested, was introduced and received into evidence by the trial judge over his objection. Appellant raises on appeal the following issue:

"Was the appellant[']s Sixth Amendment right to counsel denied by the use and introduction into evidence at trial, of the transcript of a telephone conversation between appellant and his daughter, when that phone call was recorded after the initiation of formal judicial proceedings and without appellant[']s knowledge?"

We will affirm.

On October 23, 1981, appellant's daughter contacted a social worker from the Wyoming Department of Public Assistance and Social Services (DPASS) and revealed to him that her father (appellant) had, for the past several months, engaged in an incestuous relationship with her. She, later that day, told the same story to Powell Chief of Police, Bob Coorough. After the initial interview, DPASS placed appellant's daughter in a foster home. On October 24, 1982, a criminal complaint alleging appellant had violated § 6–5–102, W.S.1977—Wyoming's incest statute—was made and filed by Chief Coorough pursuant to Rule 3, W.R.Cr.P. On the same date, an arrest warrant was issued by the justice of the peace pursuant to Rule 4, W.R.Cr.P. for the arrest of appellant.

On October 25, 1981, appellant, by his own account, voluntarily went to the Powell police station where Chief Coorough informed him of the allegations made by his daughter. Chief Coorough, prior to any conversation with appellant at the police station, insured that appellant was aware of his constitutional rights—per *Miranda*. He then proceeded to interview appellant about his daughter's allegations. During the interview, appellant complained that, since DPASS had taken his daughter, he had been unable to talk to her and would like to do so to clear up the matter. At the conclusion of the interview, despite the fact that a warrant had issued against him, appellant was allowed to go home.[2] The interview was not objectionable to appellant who, at trial, offered a transcript of that interview, which was received in evidence.

On October 26, 1981, at the request of Chief Coorough, appellant's daughter was examined by a physician to determine if there was evidence that would corroborate her allegations. The examination revealed, in the opinion of the physician, that appellant's thirteen year-old daughter had previously, and on more than one occasion, had sexual intercourse with an adult male. There was medical evidence that prior to

---

**1.** Appellant was convicted and sentenced to: six to eight years in the penitentiary for taking indecent liberties with a child in violation of § 14–3–105, W.S.1977; four to five years in the penitentiary for committing incest in violation of § 6–5–102, W.S.1977; and four to five years in the penitentiary for engaging in illicit sexual relations with a child in violation of § 14–3– 104, W.S.1977; all sentences to be served concurrently.

**2.** Chief Coorough explained that he wanted to wait until the little girl was examined by a physician and her story could be somewhat substantiated before acting on the arrest warrant.

returning to live with her father she had not yet engaged in sexual intercourse. Chief Coorough later testified that, in his mind, the physical examination further substantiated the allegations made by the little girl against appellant.

Also on the 26th, Chief Coorough arranged for appellant's requested conversation with his daughter. Appellant was not allowed to speak with her in person but was allowed to talk to her by telephone. She spoke from a social services office in Powell. The conversation was tape recorded at the request of the police. There is nothing in the record to indicate that the police instructed appellant's daughter what to say to her father other than it was requested that she not let her father know that the conversation was being taped. She was instructed to deny that the call was being taped if her father questioned that fact. During the conversation, in the face of denials by his daughter, appellant indicated his awareness that the conversation was being taped and indicated that he really did not care whether it was taped or not. The transcript reveals no instance where appellant ever admitted any criminal wrongdoing, although the State, in its zeal, apparently believed selected passages were incriminating.[3]

After all of the foregoing took place, appellant was finally arrested during the evening of October 26th. He appeared initially before a justice of the peace October 27, 1981. From that time on he has been represented by a public defender.

A transcript of the recorded telephone conversation between appellant and his daughter was introduced by the State at trial as State's Exhibit 23, and was objected to on the grounds that it was unfair and obtained as the result of an illegal wiretap. The objection was ultimately overruled and the transcript of the telephone conversation was received into evidence. During the State's cross-examination of appellant, certain allegedly incriminating passages in portions of the transcript were alluded to.

■ Appellant now on appeal raises a Sixth Amendment objection to the evidence in question when no objection on that ground was raised at trial. At trial, the transcript of the telephone conversation was objected to on the ground that it was the product of an illegal wiretap—a Fourth Amendment issue. That, of course, was not on valid ground and the objection was properly overruled. See, *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), reh. denied 386 U.S. 951, 87 S.Ct. 971, 17 L.Ed.2d 880 (1967).[4] Rule 103, W.R.E.[5] requires us, where new

3. Appellant complains of the State's use of the following exchange:
 "[Appellant] There's only one way out of this and that's for you to just get up and tell them you're lying.
 "[Daughter] That'd be lying though.
 "[Appellant] But it's the only way out of this.
 "[Daughter] That'd be lying."

4. In Hoffa the Court said:
 "Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it. Indeed, the Court unanimously rejected that very contention less than four years ago in *Lopez v. United States,* 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462. In that case the petitioner had been convicted of attempted bribery of an internal revenue agent named Davis. The Court was divided with regard to the admissibility in evidence of a surreptitious electronic recording of an

incriminating conversation Lopez had had in his private office with Davis. But there was no dissent from the view that testimony about the conversation by Davis himself was clearly admissible." 385 U.S. at 302–303, 87 S.Ct. at 413–414.
 See also, *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453, reh. denied 402 U.S. 990, 91 S.Ct. 1643, 29 L.Ed.2d 156 (1971).

5. Rule 103, W.R.E., provides, in pertinent part:
 "(a) *Effect of erroneous ruling.*—Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
 "(1) Objection.—In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context;
 * * *
 * * * * * *
 "(d) *Plain error.*—Nothing in this rule precludes taking notice of plain errors affecting

grounds for objecting to the admission of evidence are raised on appeal, to consider whether plain error nullified the conviction. 1 Louisell and Mueller, Federal Practice §§ 8 and 21 (1977). We, therefore, take up the Sixth Amendment issue to determine if plain error occurred.

We have recently set out the three-part test to determine if plain error exists: " * * * First, the record must be clear as to the incident which is alleged as error. Second, the party claiming that the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove that a substantial right has been denied him and as a result he has been materially prejudiced. * * * " *Bradley v. State,* Wyo., 635 P.2d 1161, 1164 (1981).

In this case we turn our attention only to the second requirement and look to see if appellant's right to counsel was violated since the record is clear as to the incident alleged as error. We do not dispute that the right involved is substantial. If a violation of appellant's right to counsel is found, we have indicated that it is such a basic right that its violation can never be treated as harmless error. *Chavez v. State,* Wyo., 604 P.2d 1341, cert. denied 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1979) (following *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)). We note, however, the following language from Holloway:

"Moreover, this Court has concluded that the assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.' *Chapman v. California,* supra [386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)], at 23. Accordingly, when a defendant is deprived of the presence and assistance of his attorney, either throughout the prosecution or during a critical stage in, at least, the

substantial rights although they were not brought to the attention of the court."

prosecution of a capital offense, reversal is automatic. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Hamilton v. Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); *White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963)." 435 U.S. at 489, 98 S.Ct. at 1181.

In the instant case we are not confronted with the prosecution of a capital offense nor does the claimed deprivation of the right to counsel here arise out of any conflict of interest among several defendants who have been required to be jointly represented by one attorney. We turn our attention then to determine if the trial court violated appellant's Sixth Amendment right to counsel by its ruling to receive the transcript of the telephone conversation into evidence.

The Sixth Amendment to the United States Constitution guarantees that: "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." [6] Appellant argues here that this right to counsel accrued after an arrest warrant issued but before his arrest occurred. We disagree.

Rule 6, W.R.Cr.P. sets out when an indigent's right to assignment of counsel accrues under our rules:

"Every defendant who is unable to obtain counsel shall be entitled to have counsel assigned to represent him at every stage of the proceedings from his initial appearance before the commissioner or the court through appeal, unless he waives such appointment."

That rule, as we shall show, though relating only to assignments of counsel, states the general view as regards the Sixth Amendment right to counsel of all criminal defendants. In *Chavez v. State,* supra, this court summarized the then-existing state of Sixth Amendment jurisprudence. Little has changed to expand that right since then.

6. Section 10, Art. 1 of the Wyoming Constitution likewise provides for the right to counsel in criminal prosecutions and tracks the federal provision.

The Sixth Amendment has been made applicable to the states through the Fourteenth Amendment. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963). The basic contours of the right are identical in both state and federal contexts. *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424, reh. denied 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 240 (1977), and *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). It is without question that a criminal defendant is entitled to be represented at all stages of the proceeding against him. *Chavez v. State,* supra, and *Hoskins v. State,* Wyo., 552 P.2d 342, cert. denied 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1976). In a long line of constitutional cases reaching back to *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527 (1932), the United States Supreme Court has firmly established that an individual's Sixth and Fourteenth Amendment right to counsel only accrued at or after the time adversary judicial proceedings have been initiated against him. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). In *Powell v. Alabama* the Court spoke in terms of critical periods or critical stages in the proceeding, other than trial itself, when the right to counsel attaches. A critical stage of the proceedings has been held to include:

" * * * arraignment, *Powell v. State of Alabama,* supra; preliminary hearing, *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); after the initiation of adversary judicial criminal proceedings, *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); at custodial interrogation, *Miranda v. State of Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and *Escobedo v. State of Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); at post-indictment lineup, *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); at corporeal identification after initiation of adversary judicial criminal proceedings, *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977)." *Chavez v. State,* 604 P.2d at 1347.

We note here, before proceeding further, that appellant's Fifth Amendment privilege against compulsory self-incrimination is not involved. Although the Supreme Court's decision in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), required an accused's right to counsel be included in its now classical warning, that case dealt with the Fifth Amendment and custodial interrogations.[7] To come within the requirements of *Miranda,* custodial interrogation must still be present. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, reh. denied 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981). We are not confronted with a custodial interrogation here under any construction of that term. See *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (discussing meaning of "custodial interrogation").

With the foregoing in mind, we turn to appellant's specific argument here. He urges us to adopt the position that the Sixth Amendment right to counsel attaches at the time an arrest warrant issues, regardless of whether an individual has been arrested or placed in custody. If we were to adopt such a position, he then argues that under *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the contents of his October 26th conversation with his daughter were inadmissible at trial as being obtained without a waiver of his right to counsel. Of course, ultimately appellant would then have us say that by allowing the contents of his telephone conversation to be admitted at trial, the trial court committed plain error for

---

**7.** We note that although Miranda was briefed and argued as a Sixth Amendment right-to-counsel case, to the surprise of Miranda's ACLU attorneys it was decided as a landmark Fifth Amendment case in which the right to counsel was addressed only in the context of custodial interrogations and then only to secure the Fifth Amendment privilege against self-incrimination. 61 F.R.D. 259, 278 (1972) (remarks of John J. Flynn); *Miranda v. Arizona,* supra.

which he contends we must reverse. In that we will hold there was no error in admitting the transcript, we need not reach plain error as a ground to reverse.

In *Massiah v. United States,* supra, and for that matter in the more recent and factually similar cases of *Brewer v. Williams,* supra, and *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the Supreme Court held that post-indictment or post-arraignment statements from defendants surreptitiously obtained without waiver of their right to counsel were inadmissible at trial in violation of the defendant's Sixth Amendment right to counsel. Those cases dealt particularly with post-indictment or post-arraignment statements and not with pre-arrest statements.

■ In the case before us the statements complained of were made not only before a district court information was filed or an arraignment proceeding held, but also before appellant was arrested. After a careful review of the United States Supreme Court's Sixth Amendment decisions, we have yet to find a case in which the Sixth Amendment right to counsel was held to accrue prior to arrest, whether a warrant was outstanding or otherwise. The Court, in *Kirby v. Illinois,* supra, discussing when the right to counsel attaches, said:

> " * * * [T]he point is that, while members of the Court have differed as to existence of the right to counsel in the contexts of some of the above cases, *all* of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." (Emphasis in original.) 406 U.S. at 689, 92 S.Ct. at 1882.

That statement does not declare at which elaborated event adversary judicial proceedings begin, it states that the right attaches at whichever of those events adversary judicial proceedings have begun. Of particular note is the Court's language, "adversary judicial criminal proceedings," to set the point at which the right attaches rather

than simply setting it when judicial proceedings have begun. In *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), after setting out the historical development and expansion of the Sixth Amendment's right to counsel, the Court said that it looks, when setting the point at which the right attaches, to determine whether the accused required legal aid in coping with legal problems or meeting his adversary.

The Court, in holding that an identification of an accused at a post-arrest preliminary hearing without the assistance of counsel was a violation of the accused's right to counsel said: at that point the accused found himself confronted with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977) (quoting from *Kirby v. Illinois,* supra). In all of the Supreme Court's decisions on this point, the need for an adversarial setting for the right to accrue stands out, as well it should when dealing with the right to counsel.

■ In the case before us, judicial proceedings began with the issuance of an arrest warrant but *adversary* judicial proceedings did not begin until after appellant was arrested and made a party to the proceedings. Prior to his arrest appellant was protected by, at the very least, the Fourth and Fifth Amendments but not the Sixth Amendment right to counsel, except, of course, in the custodial interrogation setting dealt with in *Miranda.* As noted earlier, there were no violations of appellant's Fourth and Fifth Amendment guarantees. To hold that the Sixth Amendment right to counsel as contemplated by appellant attached before he was made aware by arrest that the State intended to prosecute him would be to extend the Sixth Amendment right to counsel further than has any decision of the United States Supreme Court to date. The presence of such proceedings in the files of a court and the presence of a warrant in a law enforcement officer's desk or pocket is inert until triggered by placing

the accused in custody. We refuse to adopt appellant's position and extend the Sixth Amendment application as he suggests.

■■■ Appellant complains that since an arrest warrant had issued, the police could do nothing further but arrest him. Delay in the use or execution of an arrest warrant does not make it invalid. 1 Wright, Federal Practice and Procedure: Criminal 2d § 55 (1982). There are no constitutional requirements dictating that an arrest warrant be executed at the earliest opportunity. *People v. Nisser,* 189 Colo. 471, 542 P.2d 84 (1975). Rule 4, W.R.Cr.P., dictates no time limit on the execution of an arrest warrant. We note that in *Hoffa v. United States,* supra, a Sixth Amendment argument similar to appellant's was raised. There it was argued that appellant Hoffa could have been arrested before a damaging, incriminating conversation was held with a government agent. Therefore, the incriminating evidence was acquired only by flouting Hoffa's Sixth Amendment right to counsel. The Supreme Court rejected the argument when it said:

"Nothing in *Massiah,* in *Escobedo* [*v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964)], or in any other case that has come to our attention, even remotely suggests this novel and paradoxical constitutional doctrine, and we decline to adopt it now. There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal convic-

tion." (Footnote omitted.) 385 U.S. at 310, 87 S.Ct. 417.

In view of the seriousness of the allegation of incest, we cannot condemn the police for waiting until a physician's exam of appellant's daughter was completed or that their evidence was otherwise firmed up before proceeding on the warrant. Appellant's Sixth Amendment right to counsel was unaffected.

Appellant calls our attention to several state court decisions [8] in which he argues the Sixth Amendment right to counsel has been extended to the point he requests us to extend it now. Reviewing those cases we note that in all but the New York case, the courts were faced with and addressed post-arrest and, in most cases, post-arraignment events. The criminal defendants were in those cases in custody, under arrest and well aware that the State was proceeding against them; therefore, they had the right to counsel at the critical stages set out in the various decisions. Of course the situation we are faced with is distinguishable in that here appellant had not yet been arrested when the alleged Sixth Amendment violations occurred.

As noted above, appellant also cited New York authority in support of his position. In *People v. Samuels,* fn. 8 supra, the court makes it clear that the right to counsel attaches at the time a warrant issues because, in its view, a recent addition to their rules of criminal procedure requires as much. Prior to the adoption of that rule of procedure, New York followed the traditional view that held the right to counsel attached at arraignment on a warrant. *People v. Samuels,* fn. 8 supra. Because particular procedural rules in New York differ from ours, we find the line of cases following their rule changes to be less than persuasive here.

Our research of decisions from other jurisdictions leads us to the conclusion that

---

**8.** *Arnold v. State,* Mo., 484 S.W.2d 248 (1972); *People v. McGowan,* 105 Cal.App.3d 997, 166 Cal.Rptr. 725 (1980); *People v. Faulkner,* 86 Ill.App.3d 136, 40 Ill.Dec. 895, 407 N.E.2d 126 (1980); *State v. Mitchell,* Tenn., 593 S.W.2d 280, cert. denied 449 U.S. 845, 101 S.Ct. 128, 66 L.Ed.2d 53 (1980); *People v. Samuels,* 49 N.Y.2d 218, 424 N.Y.S.2d 892, 400 N.E.2d 1344 (1980).

adversary judicial proceedings at which the right to counsel attaches can only occur at some point after an individual has been arrested.[9] A criminal defendant's Sixth Amendment right to counsel attaches only when confronted by the prosecutorial forces of the State, when faced with the intricacies of substantive and procedural criminal law. We hold that the admission and use of the transcript of the telephone conversation was not a violation of appellant's Sixth Amendment right to counsel; therefore no plain error was committed.

Affirmed.

THOMAS, Justice, specially concurring.

I agree with the result in this case, and I do not necessarily disagree with any of the substantive law encompassed in the majority opinion. In my special concurring opinion in *Barnes v. State*, Wyo., 642 P.2d 1263 (1982), I did articulate my position with respect to disposition when a claim of error is urged upon this court under the guise of plain error.

I still am satisfied that as a matter of judicial restraint we should examine the substantive law only to the point of reaching a conclusion that plain error is not present. When, as in this instance, the absence of plain error hinges upon a conclusion that there exists no clear and unequivocal rule of law which was violated, we should not make any holding with respect to the merits of the appellant's claim of error. As I view the majority opinion, it does resolve a claim of error which is asserted to be reviewable under the plain-error doctrine even though review of the error claimed is foreclosed by the plain-error doctrine. For that reason I cannot join in the ground for disposition set forth in the majority opinion.

9. *State v. Irving*, 231 Kan. 258, 644 P.2d 389 (1982) (taped conversation prior to adversary judicial proceedings not a Sixth Amendment violation); *State v. Ruth*, 102 Idaho 638, 637 P.2d 415 (1981) (accused entitled to counsel from initial appearance on); *State v. Masaniai*, 63 Hawaii 354, 628 P.2d 1018 (1981) (issuance and execution of an arrest warrant does not constitute the initiation of adversary judicial proceedings); *State v. Fitzsimmons*, 93 Wash.2d 436, 610 P.2d 893 (1980), on remand from United States Supreme Court, 94 Wash.2d 858, 620 P.2d 999 (1980) (a criminal defendant's Sixth Amendment right to counsel attaches when a critical stage in a criminal prosecution resulting in a loss of liberty is reached).