THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TOM L. JUMPER, Defendant-Appellant.

Fourth District No. 4—82—0194

Opinion filed March 21, 1983.

Daniel D. Yuhas, of State Appellate Defender's Office, of Springfield, and Glenn A. Stanko and J. Steven Beckett, both of Reno, O'Byrne & Kepley, of Champaign, *pro bono*, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and Garry W. Bryan, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his conviction at bench trial of the offense of aggravated battery. Ill. Rev. Stat. 1979, ch. 38, par. 12—4.

He argues (1) he was deprived of his right to counsel rendering a showup and an inculpatory statement inadmissible, (2) the statement was also inadmissible due to the failure to inform him of his rights, (3) the statement was inadmissible as the fruit of the unlawful showup, (4) when characterized as a confession, the statement was inadmissible for failure of the State to produce all material witnesses to the statement, (5) the showup was unnecessarily suggestive, rendering both the out-of-court and the in-court identification inadmissible, and

(6) he was not proved guilty beyond a reasonable doubt. The imposition of a fine is also appealed on the basis that there was no evidence indicating defendant's ability to pay. We affirm both the conviction and the fine.

On September 4, 1980, defendant was charged by indictment with aggravated battery in that he "made physical contact of an insulting and provoking nature with Daniel Katz, knowing Daniel Katz to be a peace officer of the city of Bloomington, while said officer was engaged in the execution of his official duties, by grabbing said officer in a headlock and throwing him against an automobile ***." (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(6).) On the same day he was also indicted for resisting arrest. (Ill. Rev. Stat. 1979, ch. 38, par. 31—1.) On motion of the State, two informations which had been previously filed charging the same offenses alleged in the indictments were the subjects of a *nolle prosequi*.

Prior to trial, defendant filed a motion to suppress a statement made subsequent to his arrest and prior to the giving of any rights in accordance with *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The motion was consolidated with the bench trial. Evidence on both matters was taken on February 5, 1982. At the close of the State's evidence, the court denied the motion to suppress, granted a directed verdict for defendant on the charge of resisting a peace officer, and denied a directed verdict on the aggravated battery charge. The defense presented no evidence. The court found defendant guilty of aggravated battery. On March 3, 1982, defendant was sentenced to 24 months of probation, was fined $200 and assessed $70 in court costs to be paid within the first 12 months of the probationary period.

The State's evidence consisted of the testimony of three Bloomington police officers: Kevin Livingston, Russell Thomas, and Daniel Katz. The officers were all called to assist Officer Kaiser at approximately midnight on July 30, 1980, at the Third Ward Club, in the 400 block of South Main Street in Bloomington. A considerable melee ensued during the course of which defendant's brother Alonzo was arrested. When Katz arrived he was requested to assist in escorting Alonzo to a squad car. The latter sought to escape and Officer Katz testified that as Alonzo began struggling someone jumped Katz from behind with a headlock and stated that Katz "wasn't going to f--- with his brother." As he was grabbed in the headlock Katz was swung around until he went down to the ground. The person grabbing him also rolled on the ground and was more or less on top of Katz while holding Katz to the ground. Katz was asked if he rolled into the squad

car, or bumped against it, when he went down to the ground. He replied, "Yes, sir, we were right next to the squad car."

Katz' struggle on the ground lasted approximately 30 seconds during which time he could feel people around and fists flying. He was finally able to break loose of the headlock and grab the individual who had a hold of him by the shirt or arm. As they were getting up, Katz kept hold of the individual, who tried to run. He finally was stopped approximately 20 to 40 feet away by Officer Kaiser. Officer Kaiser asked the individual what his name was, and the subject stated that his name was Tommy Jumper. Katz testified that as he was standing by Kaiser's squad car, he had an opportunity to see the person that he had had a hold of and followed to that point. He identified the defendant, Tommy Jumper, and testified specifically that he saw defendant's face and size. On redirect examination, Katz testified that the only physical difference he knew of between Joe Jumper and Tommy Jumper was that Tommy was taller than Joe. Although Katz did not know exactly who said, "You ain't going to f--- with my brother," he also specifically stated that he did not believe it was possible that Joe Jumper grabbed or touched him in any way. Rather, Katz stated that only one person grabbed him, and that was defendant.

On August 20, 1980, Katz heard over the radio that a person by the name of Tommy Jumper was in custody. Officer Rusk had asked the station to check on a warrant for a Tommy Jumper, and while the station was checking Katz radioed to Rusk and told him there was a warrant outstanding. Katz went to the police station and walked into the booking room where Officer Rusk and Tommy Jumper were. Officer Rusk asked Katz if Katz knew the other person. Katz responded that he was the individual that held Katz down at the Third Ward Club. Katz did not ask Tommy Jumper any questions at that time. However, Katz testified Jumper stated that he, Jumper, "did have a hold of me down there at the Third Ward Club, and that he wouldn't have had to let me go, and that I [Katz] could have gotten away from him if I wanted to." No *Miranda* warnings had been given to defendant.

Defendant and the State also agree to a stipulation which provided that if Officer Rusk were called to testify he would essentially corroborate the testimony regarding Jumper's statement.

■ The right to counsel attaches upon the filing of a criminal complaint or information and the issuance of an arrest warrant. *People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161; *People v. Giovanetti* (1979), 70 Ill. App. 3d 275, 387 N.E.2d 1071; *People v.*

*Faulkner* (1980), 86 Ill. App. 3d 136, 407 N.E.2d 126, *appeal denied* (1980), 81 Ill. 2d 603.

The warnings or admonitions required under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, had not been given to the defendant at the time of the remark made by defendant in the presence of Katz and Rusk.

 █ We find that there was no violation of the rule stated in *Miranda* in admitting the statement of defendant made by defendant during the booking procedure when Rusk inquired of Katz whether the latter knew defendant. The meaning of "interrogation" for purposes of the *Miranda* rule has been more specifically defined in *Rhode Island v. Innis* (1980), 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682. It is apparent that there was no express question directed to defendant, but rather his remark was interjected into the conversation between Rusk and Katz. Upon the evidence it cannot be said that the conversation between the officers was the "functional equivalent of interrogation"—a phrase articulated to mean words or actions by the officers which are reasonably likely to elicit an incriminating or exculpatory response by the defendant.

As stated in *Innis*:

> " 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." 446 U.S. 291, 300, 64 L. Ed. 2d 297, 307, 100 S. Ct. 1682, 1689.

It is stated in *Miranda,* and reiterated in *Innis,* that:

> "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (384 U.S. 436, 478, 16 L. Ed. 2d 694, 726, 86 S. Ct. 1602, 1630.)

We conclude that the statement interjected by defendant was a volunteered statement under the standards stated in *Miranda* and in *Innis,* and that there was no violation of any fifth amendment right of the defendant in the admission of such statement.

Upon the issue of whether defendant's remark was inadmissible under the sixth amendment because made in the absence of defendant's counsel, we conclude that they were properly admitted. The opinion in *Brewer v. Williams* (1977), 430 U.S. 387, 51 L. Ed. 2d 424, 97 S. Ct. 1232, has stated the measure of inadmissibility in such circumstances. In *Brewer,* defendant had been arraigned upon a charge of murder, and it was known to police officers that he had retained counsel. While being transported by automobile, an officer made the "Christian burial speech" directed to defendant with the words "I

want to give you something to think about while we're traveling down the road." 430 U.S. 387, 392, 51 L. Ed. 2d 424, 432, 97 S. Ct. 1232, 1236.

Evidence resulting from defendant's subsequent disclosure of the location of the body of the victim was held to be inadmissible by reason of the violation of defendant's right to counsel. The opinion discloses factors found in the record to include the fact that the officers knew that defendant had retained counsel, and had agreed not to interrogate him during the travel, and that the words or conduct of the officers were directed to the defendant with a specific design or purpose to elicit information from the defendant. These are essentially the same factors as found in *Massiah v. United States* (1964), 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199.

■ In *Brewer*, it is said that after the commencement of adversary proceedings, defendant's right to counsel becomes effective "when the government interrogates him." (430 U.S. 387, 401, 51 L. Ed. 2d 424, 438, 97 S. Ct. 1232, 1240.) Interrogation is articulated in terms of words or conduct " 'with the specific intent to elicit incriminating statements.' " (430 U.S. 387, 403, 51 L. Ed. 2d, 424, 439, 97 S. Ct. 1232, 1241.) We can discover no reason why statements volunteered by defendant, as in *Innis*, should not be admissible in matters concerning the sixth amendment. Here, as in *Innis*, the conversation was between two officers "to which no response from the respondent was invited." 446 U.S. 291, 302, 64 L. Ed. 2d 297, 309, 100 S. Ct. 1682, 1690.

■ We conclude that the testimony concerning defendant's remark made during the conversation between Rusk and Katz did not violate any right to counsel under the sixth amendment.

It is argued that Katz' observation of defendant during the booking process following his arrest amounted to a showup held in the absence of counsel with the result that all evidence concerning the identification of defendant procured in violation of defendant's sixth amendment rights was illegally obtained and was inadmissible at trial.

■ ■ We do not agree that the circumstances in this record disclose a showup, illegal or otherwise. Presumably, in the normal course of his duties Katz would be required to be in the room, or pass through rooms used for booking procedures. There is no evidence suggesting an overt police plan or effort to establish the identity of the defendant through witnesses, or to determine whether or not a witness could identify defendant. Assuming *arguendo*, however, that Katz' observation made at the booking was a showup made in the absence of defendant's counsel, reversal of the conviction is not neces-

sarily required. In *People v. Marshall* (1977), 47 Ill. App. 3d 784, 365 N.E.2d 367, the contention of necessary reversal was expressly rejected. The court stated:

> "It is well established that the requirement of counsel's presence is based upon consideration of due process and that if all the circumstances surrounding the identification procedure taken together clearly indicate that due process was followed, the absence of counsel at the identification lineup is not fatal to the judgment reached by the trial court. [Citation.]" 47 Ill. App. 3d 784, 786, 365 N.E.2d 367, 369.

The opinion was followed in *People v. Giovanetti* (1979), 70 Ill. App. 3d 275, 387 N.E.2d 1071, and *People v. Faulkner* (1980), 86 Ill. App. 3d 136, 407 N.E.2d 126, *appeal denied* (1980), 81 Ill. 2d 603. *Marshall* and the succeeding opinions were founded upon language quoted in *Wong Sun v. United States* (1963), 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417, and reiterated in *United States v. Wade* (1967), 388 U.S. 218, 241, 18 L. Ed. 2d 1149, 1165, 87 S. Ct. 1926, 1939, that the question was " ' "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." ' "

In *Gilbert v. California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951, the "means sufficiently distinguishable" is stated more simply as an identification from a source independent or an origin different from the inadmissible evidence of a showup. Whether an identification has an independent origin is determined from a reconsideration of the evidence concerning the witness' opportunity to view the defendant, his degree of attention, the accuracy of any description given, the level of certainty in identification, and the time intervening between the event and the making of the identification. *Gilbert; People v. Hilton* (1974), 23 Ill. App. 3d 369.

While defendant argues some matters of detail, this record shows that Katz and his assailant struggled on the ground for a period, and that Katz grabbed and held defendant by his arm as the latter attempted to run away and retained a hold on him until defendant was stopped by another officer some distance away. Katz heard defendant identify himself to the other officer as Tommy Jumper. Katz specifically observed defendant's face and size. There was no evidence of misidentification or prior misdescription by Katz of his assailant, and the intervening time between the struggle and the identification was short. Nothing in the record suggests hesitation in making an identifi-

cation and there is a sufficient record to sustain the finding of the trier of fact upon the issue. Again, assuming that the observation of Katz at the jail was, in fact, inadmissible evidence, in the context of this record we conclude that his in-court identification of defendant had a foundation in an independent source, and that the presence of any inadmissible evidence was harmless beyond a reasonable doubt within the meaning of *Chapman v. California* (1967), 386 U.S. 18, 24, 17 L. Ed. 2d 705, 711, 87 S. Ct. 824, 828.

Finally, defendant challenges the assessment of a fine of $200 and $70 in court costs to be paid within the first 12 months of his 24-month probationary period. He asserts that the court failed to consider his financial resources and future ability to pay the fine as required by section 5—9—1(d) of the Unified Code of Corrections. Ill. Rev. Stat. 1979, ch. 38, par. 1005—9—1(d).

■ A trial judge need not specifically state that a defendant was determined to have the financial resources and ability to pay. The finding is implicit in the imposition of a fine where the judge is aware of the facts which support such a determination. (*People v. Bishop* (1980), 81 Ill. App. 3d 521, 401 N.E.2d 648.) In the present case the record revealed defendant had only $66 in debt, no apparent monthly expenses, and the apparent capacity to be employed. The presentence report indicated he was 19 years old and had no physical problems. Although unemployed at the time of the report, defendant had informed the presentence investigator that he was previously employed. Defendant posted $100 as 10 percent of his $1,000 appearance bond which constitutes a fund out of which court costs and fines may be paid. (Ill. Rev. Stat. 1979, ch. 38, par. 110—7(h), (i).) Defendant's cited case of *People v. Oravis* (1980), 81 Ill. App. 3d 717, 402 N.E.2d 297, is distinguishable since that defendant was originally sentenced to six years of imprisonment, reduced by the appellate court to four years. He had $2,000 of liability and was fined $2,000. Clearly he did not have the present ability to pay and would not be able to pay in the future due to his imprisonment. The present defendant has no substantial debt and should be able to work while on probation. There is no abuse of discretion in imposing the fine. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

For the foregoing reasons the conviction and fine are affirmed.

Affirmed.

WEBBER, P.J., and MILLER, J., concur.