In the Matter of the ADOPTION OF
RHA, a Minor.

PAA, Appellant (Respondent),

v.

John DOE and Jane Doe,
Appellees (Petitioners).

In the Matter of the ADOPTION OF
RHA, a Minor.

John DOE and Jane Doe,
Appellants (Petitioners),

v.

PAA, Appellee (Respondent).

Nos. C-84-3, C-84-4.

Supreme Court of Wyoming.

July 9, 1985.

Rehearing Denied Aug. 15, 1985.

Chris Dull Edwards of Edwards & Edwards, Cody, for respondent, PAA.

John W. Davis of Davis, Donnell, Worral & Bancroft, P.C., Worland, for petitioners John and Jane Doe.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

BROWN, Justice.

This appeal is from a "Final Order of Adoption" granted by the Washakie County District Court, permitting John and Jane Doe to adopt RHA. Appellant PAA, the father of RHA, raises the following issues:

"The district court's failure to make a finding of fact as to whether the appellant [PAA] *willfully* failed to contribute to the support of [RHA] for a period of one year *immediately prior* to the filing

of the petition to adopt resulted in an erroneous conclusion of law as to whether appellant [PAA's] consent was required for the adoption of [RHA].

"The district court's failure to make a finding of fact as to whether the appellant [PAA] *willfully* permitted [RHA] to be maintained by Park County D–PASS for a period of one year *immediately prior* to the filing of the petition of adoption without substantially contributing to the support of [RHA] resulted in an erroneous conclusion of law as to whether appellant [PAA's] consent was required for the adoption of [RHA].

"There was not substantial evidence to support the findings of fact and conclusions of law stated by the district court.

"The district court abused its discretion when it bifurcated the adoption proceeding and refused to allow [PAA] any knowledge of the petitioner's identity or refused participation of the appellant in the 'best-interests' portion of the proceeding.

"Wyoming Statutes §§ 14–2–308 through 14–2–318 for termination of parental rights and Wyoming Statute § 1–22–110 for adoption without parental consent violate appellant [PAA's] substantive due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution because they arbitrarily and without reason, set different standards for termination of parental rights."

Petitioners in the district court, John and Jane Doe, cross-appeal and raise an additional issue:

"Did the district court abuse its discretion when it refused to grant a permanent injunction

"1) Restraining [PAA] from contacting certain named and unnamed persons or seeking them out after his release from Prison; and

"2) Enjoining [PAA] from entering Park or Washakie Counties after his release from prison."

We will affirm the district court in both appeals.

RHA is one of the children of the marriage of RA and PAA. The marriage ended in divorce, with PAA abandoning his family. In 1981, seven years later, after RHA had been molested by her stepfather, she went to live with her father, PAA, in Powell, Wyoming. Appellant PAA began sexual intercourse with his twelve-year old daughter in July, 1981, and had sexual intercourse with her about fifty times before she revealed to authorities what had been taking place. She was removed from her father's home in late October 1981, and criminal charges were brought against him. At a criminal trial in July, 1982, PAA was convicted of the crimes charged in the information, and was

"'* * * sentenced to: six to eight years in the penitentiary for taking indecent liberties with a child in violation of § 14–3–105, W.S.1977; four to five years in the penitentiary for committing incest in violation of § 6–5–102, W.S.1977; and four to five years in the penitentiary for engaging in illicit sexual relations with a child in violation of § 14–3–104, W.S. 1977; all sentences to be served concurrently." *[PAA] v. State*, Wyo., 660 P.2d 1156 (1983).

From October, 1981 until May of 1982, PAA was earning $1,400 per month as a truck driver. From October, 1981, the Park County Division of Public Assistance and Social Services was paying about $300 per month for RHA's maintenance, plus other medical and counseling costs. Between the time criminal charges were filed and trial was held, PAA sent a total of $45 to RHA for her support. He declared to Peter Dvorak, a social worker, that he was willing to give his daughter "walking-around" money, but "that under no conditions would he make payments to the State of Wyoming or any other state." From January 6, 1983 to January 6, 1984, the year immediately before the petition to adopt was filed, and while PAA was incarcerated in the Wyoming State Penitentiary, he earned $35 a month. From this PAA contributed a total of $16 toward the care of his daughter.

A petition to adopt RHA was filed in the district court on January 6, 1984, the petitioners being allowed to file under the names of John and Jane Doe. The petitioners alleged that the statutory reasons for nonconsent of the parent had been met, pursuant to § 1–22–110, W.S.1977. The district court ruled that the trial should be bifurcated, so that the question of whether the consent of PAA was required would be heard separately from the question of whether John and Jane Doe were fit and proper persons to adopt RHA, and also whether the adoption was in her best interests.

An order and judgment entered on May 21, 1984, held that the consent of PAA to the proposed adoption by John and Jane Doe was not required. PAA was denied further participation in the adoption proceedings, and John and Jane Doe were allowed to adopt RHA.

I

The first issue is whether the consent of appellant to adopt was necessary. Section 1–22–110, W.S.1977, provides in part:

"(a) In addition to the exceptions contained in W.S. 1–22–108, the adoption of a child may be ordered without the written consent of the parents or putative father * * * if the court finds that the nonconsenting parent or putative father has:

* * * * * *

"(iii) Willfully abandoned or deserted the child; or

"(iv) Willfully failed to contribute to the support of the child for a period of one (1) year immediately prior to the filing of the petition to adopt; or

"(v) Willfully permitted the child to be maintained in or by a public or private institution or by the division of public assistance and social services within the department of health and social services for a period of one (1) year immediately prior to the filing of the petition without substantially contributing to the support of the child; or

* * * * * *

"(vii) Been adjudged by a court to be guilty of cruelty, abuse, neglect or mistreatment of the child. * * *"

The court's Order and Judgment dated May 21, 1984, reflects that in the first part of the bifurcated hearing the court determined "That the consent of [PAA] to the proposed adoption * * * is not required." To support this conclusion the court found:

"6. That from October 26, 1981 until May of 1982 [PAA] received substantial income and was able to contribute to the support of his daughter and that he failed to do so without justifiable excuse and during that period contributed the sum of $55.00.

"7. That in May of 1982 [PAA] was convicted in Park County, Wyoming and was sentenced to the Wyoming State Penitentiary for a period of six to eight years.

"8. That since the incarceration [PAA] has contributed a total of $16.00 to his daughter for support in the form of insurance premium at her school and further sent her $15.00 for Christmas while earning a sum of $35.00 a month.

"9. That [PAA] has not substantially contributed to the support of [RHA] since October 26, 1981 and that the Park County D–PASS has since October 26, 1981 and until the filing of the Petition herein maintained and supported [RHA].

"10. That the above findings constitute evidence of clear and convincing nature that [PAA] has not substantially contributed to the support of [RHA] since October 26, 1981."

We do not express an opinion whether or not the trial court was correct in determining that the consent of appellant to adopt was unnecessary for the reasons stated above. It is clear, and more significant that appellant had been adjudged by a court to be guilty of cruelty, abuse, neglect or mistreatment of RHA. Because of this conviction the consent of

appellant to adopt RHA was not required. § 1–22–110(a)(vii), W.S.1977.

We have held numerous times that if the determination of the trial court is correct on any theory it will not be disturbed, or if there exists any legally valid ground appearing in the record, we must affirm. *Anderson v. Bauer*, Wyo., 681 P.2d 1316 (1984); *Valentine v. Ormsbee Exploration Corporation*, Wyo., 665 P.2d 452 (1983); *People v. Fremont Energy Corporation*, Wyo., 651 P.2d 802 (1982); *ABC Builders, Inc. v. Phillips*, Wyo., 632 P.2d 925 (1981).

Appellant makes an ingenious argument that § 1–22–110(a)(vii), W.S.1977, has no application to this case. He states in his brief:

> "Subsection (vii) of Wyoming Statute Section 1–22–110 (1977) specifically lists the crimes for which a parent must be adjudged guilty. It is asserted by Respondent that the crime of 'abuse' in Section 1–22–110(a)(vii) is referring to Section 6–2–503 of the Wyoming Statutes (1977, as amended 1982), or section 6–4–504 (before recodification and as it existed at the time of Mr. [PAA's] trial). The crime of cruelty refers to Section 14–3–101(a)(ii) of the Wyoming Statutes (1977, repealed 1982)."[1]

■ Succinctly stated, appellant contends that he has not been convicted of the specific statutory crimes of cruelty, abuse, neglect, or mistreatment, of a child, and therefor § 1–22–110(a)(vii), W.S.1977, is inapplicable. We are unable to determine that the legislature intended that the words, cruelty, abuse, neglect, and mistreatment, set out in § 1–22–110(a)(vii), W.S.1977, refer to specific statutory crimes. Counsel, in walking us through the statutes, has not added to our understanding of legislative intent.

■ It seems reasonable to conclude, as we do, that "cruelty" as used in § 1–22–110(a)(vii), encompasses much more than a statutory crime of cruelty. Likewise, "abuse" used in the same statute encompasses more than a statutory crime of abuse. An incestuous relationship with a twelve-year old girl constitutes cruelty, abuse and mistreatment by any definition of those terms.

We hold that PAA had been adjudged guilty of cruelty, abuse and mistreatment of RHA by reason of his conviction of taking indecent liberties, and incest and illicit sexual relations. Because of the conviction it was not necessary to obtain the consent of PAA in order that RHA be adopted by John and Jane Doe.

## II

Appellant contends that it was error to bifurcate the adoption proceedings and deny him knowledge of the identity of John and Jane Doe, petitioners for adoption. PAA also complained that he was denied participation in the second phase of the adoption proceeding, that is, the hearing that considered the fitness and qualifications of the petitioners for adoption and the "best interests" of RHA.

Rule 42(b), Wyoming Rules of Civil Procedure, regarding separate trials, provides:

> "The court in furtherance of convenience or to avoid prejudice, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of *any separate issue* or of any number of claims, cross-claims, counterclaims, third-

---

1. Section 6–4–504, W.S.1977, provides:
   "Any adult who intentionally or in reckless disregard of the consequences causes violent physical injury or mental trauma to a child under the age of sixteen (16) or commits any assault or assault and battery upon the child to a degree as to require medical, psychological or psychiatric treatment to heal or overcome the injuries or damages sustained by the child, or who sexually molests a child under the age of sixteen (16) is guilty of child abuse and upon conviction shall be sentenced to the state penitentiary for a term of not more than five (5) years."
   "Section 14–3–101(a)(ii), W.S. 1977 (Dec. 1978 pamphlet), provides:
   "(a) No parent, guardian or custodian of any child shall:
   
       \*    \*    \*    \*    \*    \*
   
   "(ii) Abuse, torture, expose or cruelly punish the child \* \* \*."

party claims, or issues." (Emphasis added.)

■ Appellant does not contend that the district court was without authority to bifurcate the adoption proceedings, but rather that the court abused its discretion in ordering bifurcation. We disagree. Until the threshold question, whether or not the consent of PAA was required, the identity of John and Jane Doe was irrelevant. Also, the fitness of John and Jane Doe and the best interests of RHA were irrelevant matters until the consent issue had been resolved. *In re Adoption of Strauser*, 65 Wyo. 98, 196 P.2d 862 (1948).

■ A determination by the district court that appellant's consent to adopt was not required effectively terminated his parental rights to RHA. After this determination, appellant was, in effect, a stranger to the adoption proceedings. The court did not abuse its discretion in bifurcating the adoption proceedings and excluding PAA from the hearing on the merits of the petition to adopt.

### III

■ Appellant makes an oblique attack on the constitutionality of § 1–22–110, W.S. 1977. This section is part of the statutory scheme of adoption. §§ 1–22–110 through 1–22–115, W.S. 1977. We could, with justification, summarily decide against appellant on the constitutional issue. He does not cite any cases nor make any logical argument in support of this assignment of error. We need not notice a claimed error unsupported by authority or authoritative argument. *Klatt v. Klatt*, Wyo., 654 P.2d 733 (1982).

Apparently, appellant contends that § 1–22–110 is unconstitutional because this statute has different standards for terminating parental rights than does §§ 14–2–308 through 14–2–318 (1984 Cum.Supp.). Grounds for terminating parental rights are contained in § 14–2–309:

"(a) The parent-child relationship may be terminated if any one (1) or more of the

following facts is established by clear and convincing evidence:

"(i) The child has been left in the care of another person without provision for the child's support and without communication from the absent parent for a period of at least one (1) year. In making the above determination, the court may disregard occasional contributions, or incidental contacts and communications;

"(ii) The child has been abandoned with no means of identification for at least three (3) months and efforts to locate the parent have been unsuccessful;

"(iii) The child has been abused or neglected by the parent and efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent;

"(iv) The parent is incarcerated due to the conviction of a felony and showing that the parent is unfit to have the custody and control of the child."

Appellant states in his brief: "The different standards under these two different sets of statutes, (§ 1–22–110, Adoption, and 14–2–309, Termination) as applied to [PAA], have greatly affected his rights." Appellant continues by trying to demonstrate that his parental rights could not be terminated under § 14–2–309(a)(i), given the facts of this case. We do not see the relevance of that argument. No one in this case makes any claim that parental rights could be terminated under § 14–2–309(a)(i). And finally, appellant contends that "The statutes operate in an arbitrary and unreasonable manner when separate standards are applied. * * * The two statutes should be combined to effectively and uniformly give notice to [PAA] of his rights."

■ Terminating parental rights by operation of law under § 1–22–110 is always in connection with an adoption. Terminat-

ing parental rights under §§ 14–2–309 through 14–2–318 may be for purposes other than the possibility of an adoption. The two statutes in question do not serve identical purposes, and appellant has not cited authority or suggested any logical reason why the two statutes should have identical standards.

In appellant's constitutional attack he quotes from *Matter of Adoption of Baby Boy L*, 231 Kan. 199, 643 P.2d 168, 187 (1982): "A statute, apparently valid upon its face, may be unconstitutional in its application to a particular set of facts, circumstances or classifications," citing *Flax v. Kansas Turnpike Authority*, 226 Kan. 1, 596 P.2d 446 (1979). We do not disagree with that abstract principle of law. However, appellant does not relate such principle of law to this case, or if he does, his argument is so subtle that we fail to appreciate it.

A party attacking the constitutionality of a statute has a heavy burden. We said in *Hopkinson v. State*, Wyo., 664 P.2d 43, 54 (1983):

"When this court is presented with a constitutionally based challenge to a statute, it presumes the statute constitutional. Any doubt must be resolved in favor of constitutionality. Before we strike it down we must find that it clearly violates some constitutional principle, state or federal. [Citations.] The Supreme Court of the United States has said that, even when a serious doubt of constitutionality is present, courts should 'ascertain whether a construction of the statute is fairly possible by which the question may be avoided.' [Citation.]"

In *Meyer v. Kendig*, Wyo., 641 P.2d 1235, 1238–1239 (1982), we said:

"When the constitutionality of a statute is assailed, we are governed by the following standards:

" 'Statutes are presumed to be constitutional unless affirmatively shown to be otherwise, and one who would deny the constitutionality of a statute has a heavy burden. The alleged unconstitutionality must be clearly and exactly

shown beyond any reasonable doubt. *Stephenson v. Mitchell ex rel. Workmen's Compensation Department*, Wyo. 1977, 569 P.2d 95, 97. * * *'

\*    \*    \*    \*    \*    \*

" 'Courts have a duty to uphold the constitutionality of statutes which the legislature has enacted if that is at all possible, and any doubt must be resolved in favor of constitutionality. *Witzenburger v. State*, Wyo. 1978, 575 P.2d 1100, 1112; *Lund v. Schrader*, Wyo. 1971, 492 P.2d 202, 206. * * *' [Citation.]"

Appellant has fallen far short of meeting his burden to demonstrate the unconstitutionality of § 1–22–110.

## IV

In connection with the adoption proceedings, petitioners John and Jane Doe applied to the court for a permanent injunction against PAA. They asked that he be

"permanently restrained from any of the following acts against [RHA], the Petitioners, Peter Dvorak, [John Doe and Jane Doe], the Court, the attorneys of record, officials of the Wyoming DPASS or witnesses testifying herein:

"A. From threatening, intimidating or harassing said persons by letters or in any form;

"B. From attempting, in any manner, to obtain the identity of Petitioners or the whereabouts of any of the above-named persons.

"C. From seeking out any of the above persons from coming in or upon or about any premises in which they may be located, from harming or attempting to harm them in any way. From and after the time of [PAA's] release from the Wyoming State Penitentiary, he should be enjoined from coming to Park County or Washakie County, Wyoming and if he should do so, it should be deemed a direct contempt of court and the Sheriff of those counties should be empowered and ordered to immediately arrest him if he should be found in such counties and

incarcerate him pending contempt proceedings or further Order of the Court."

Although a preliminary injunction against PAA had been granted, the trial court denied a permanent injunction because PAA was incarcerated in the state penitentiary. The court said, "At some future time, upon his release, there may be additional evidence to warrant a temporary or permanent injunction, but at this time, the court sees no need for this type of relief." Petitioners cross-appealed the denial of a permanent injunction.

There was evidence that PAA threatened to "destroy" or do bodily harm to numerous people, including the prospective adoptive parents and anyone that had anything to do with the adoption or the criminal case against him. PAA testified that at a certain time if he could have gotten his hands on petitioners he would have killed them. He could not assure the court that after his release from the penitentiary he would not kill petitioners. The most charitable thing we can say about PAA is that he was grossly deficient in acceptable social behavior patterns. Furthermore, if he had any redeeming qualities, he managed to keep them fairly well concealed.

PAA characterizes petitioners' reasons why an injunction should have been granted as "twenty pages of predominantly emotional argument." Not so, and under the facts of the case it could reasonably be concluded that PAA was a depraved, dangerous and violent man.

■ We have great sympathy for everyone involved with PAA; however, the requested injunctive relief was overbroad, sought protection for persons not parties to the court proceedings, requested protection for persons not named, and unnecessarily sought to restrict activities of PAA. The application for injunctive relief does not comply with Rule 65(d), W.R.C.P., which provides:

"Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

One authority has stated:

"* * * An injunction, whether temporary or permanent, cannot as a general rule be sought as a matter of right, but the power to grant or refuse it rests in the sound discretion of the court under the circumstances and the facts of the particular case * * *." 43 C.J.S. Injunctions § 14, pp. 768–769 (1978).

In *Kincheloe v. Milatzo*, Wyo., 678 P.2d 855, 861 (1984), we said:

"Preliminarily, it is to be remembered that, when courts are called upon to employ their injunctive authority, they must utilize this power with great caution. We have said:

" 'The extraordinary remedy of an injunction is a far-reaching force and must not be indulged in under hastily contrived conditions. It is a delicate judicial power and a court must proceed with caution and deliberation before exercising the remedy.' *Simpson v. Petroleum, Inc.*, Wyo., 548 P.2d 1, 3 (1976).

"Injunctions are extraordinary remedies and are not granted as of right. In granting an injunction, the court exercises broad, equitable jurisdiction. *Brown v. J.C. Penney Co.*, D.C.Wyo., 54 F.Supp. 488 (1943). This discretion is, however, not unfettered, but 'must be exercised reasonably and in harmony with well established principles.' 43 C.J.S. Injunctions § 14 p. 772."

For the reasons set forth in this opinion and authority cited, we hold that the trial court did not abuse its discretion in denying a permanent injunction.

Affirmed.