2009 WY 140

**Kenneth J. ZALOUDEK, Jr.,**
**Appellant (Defendant),**

v.

**Becky ZALOUDEK, Appellee (Plaintiff).**

No. S–09–0016.

Supreme Court of Wyoming.

Nov. 12, 2009.

Representing Appellant: William L. Combs, Combs Law Office, Evanston, Wyoming.

Representing Appellee: Richard J. Mulligan, Mulligan Law Office, Jackson, Wyoming; Heather Noble, Jackson, Wyoming. Argument by Ms. Noble.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   In this appeal, Kenneth J. Zaloudek challenges the district court's property division.  We will affirm.

### ISSUES

[¶ 2]   Mr. Zaloudek states his three appeal issues as follows:

1.   Did the trial court afford husband fundamental due process in its rulings surrounding the Order on Plaintiff's Motion Regarding Reimbursement of Hay?

2.   Is a decree of divorce that simply adopts one party's proposal without offering it for approval to the other party entitled to this Court's deference when it contains unjust and inequitable divisions of property based on defective factual findings?

3.   Does the decree of divorce unfairly divide assets and debts without adequate

analysis of property division factors and by improperly reaching non-marital assets?

Ms. Zaloudek restates the issue more simply: Did the trial court abuse its discretion in its divorce decree ordering an equitable division of the property?

### FACTS

[¶ 3]   Ms. Zaloudek began working as an airline flight attendant in 1972. Mr. Zaloudek began working as a pilot for the same airline in 1973.  They met in 1986 when both were working on the same flight. They began living together later that year in a house owned by Ms. Zaloudek in Georgia.  They were married in August of 1990.  A short time later, Ms. Zaloudek sold the Georgia property, and the couple built a house in Park City, Utah. They sold the Utah property in 1996, and moved to a home near Evanston, Wyoming.  The parties have no children.

[¶ 4]   Ms. Zaloudek filed for divorce in February of 2007.  She was still working for the airline, but Mr. Zaloudek had taken early retirement in 2003.  Both had accumulated substantial retirement assets, but his were larger because his earnings as a pilot had exceeded those of Ms. Zaloudek as a flight attendant.   Near the date of the divorce trial, Mr. Zaloudek's retirement accounts were valued at approximately $1,700,000.00, and he also received pension payments of over $2,000.00 per month.  Ms. Zaloudek had a retirement account worth approximately $350,000.00, plus an IRA account worth a little more than $40,000.00.  Ms. Zaloudek testified that she intended to keep working and would earn an annual salary of $40,000.00.  She estimated that if she retired as of the date of the trial, she would be eligible for a monthly pension benefit of approximately $1,200.00 per month.  The couple's net equity in their Evanston property was approximately $530,000.00.  The parties owned personal property estimated by one of them to be worth approximately $120,000.00.

[¶ 5]   The couple raised horses, and at one time kept as many as 27 horses on their Evanston property.  At the time the divorce was filed, they owned 12 or 13 horses.  After filing for divorce and moving to a condominium in Evanston, Ms. Zaloudek took two of the horses and kept them at a boarding facility.   In the autumn of 2007, while the divorce was pending, Ms. Zaloudek filed a motion with the district court seeking an order allowing her to remove hay from the Evanston property to feed her horses at the boarding facility.   Mr. Zaloudek opposed that motion.  The district court held an unreported and unrecorded hearing on the matter.  The court did not grant Ms. Zaloudek permission to remove hay from the property but, instead, ordered Mr. Zaloudek to pay Ms. Zaloudek for hay to be purchased from another source.   Mr. Zaloudek was ordered to pay her $1,800.00 for hay, an additional $500.00 to reimburse her for miscellaneous horse boarding costs, and $500.00 in attorney's fees, for a total of $2,800.00.  The district court indicated that it would "consider the payment" for the hay "in determining the final equitable distribution of property between the parties at the time of trial."

[¶ 6]   At trial, the parties largely agreed to a division of their personal property.  The parties also agreed that the Evanston property should be sold, with the net proceeds divided equally between them.  They did not agree on how to divide the retirement assets, and after trial, in accordance with the district court's order, the parties submitted proposed divorce decrees setting forth their separate proposals for dividing the retirement assets.  The proposals were detailed and rather complicated, but can be fairly characterized in simple terms.  Ms. Zaloudek proposed an equal split of the retirement assets.  To achieve an equal division of the property, Mr. Zaloudek would be required to pay Ms. Zaloudek an additional $782,659.17.  In contrast, Mr. Zaloudek proposed that he should receive a substantially greater share, based in large part on the fact that each party had accumulated retirement assets before the marriage.  He asserted that the pre-marital assets should not be divided, but that the district court should divide only those portions of the retirement accounts and benefits that had accumulated during the marriage.  To achieve his proposed property division, Mr. Zaloudek would pay Ms. Zaloudek an additional $247,114.19.

[¶ 7]   The district court rejected Mr. Zaloudek's proposed division of the retirement assets.   It accepted Ms. Zaloudek's proposal, and adopted her proposed divorce decree nearly verbatim.   Mr. Zaloudek filed a timely appeal challenging the district court's decisions.

### STANDARD OF REVIEW

■■■   [¶ 8]   A district court's division of property in a divorce is entitled to substantial deference.

> Decisions regarding the division of marital property are within the trial court's sound discretion, and we will not disturb them on appeal unless there was an abuse of discretion.   *Davis v. Davis*, 980 P.2d 322, 323 (Wyo.1999).   An abuse of discretion occurs when the property disposition shocks the conscience of this Court and appears to be so unfair and inequitable that reasonable people cannot abide it.   *Id.* We view the evidence in the light most favorable to the prevailing party, affording that party every reasonable inference which can be drawn from the record.   *Id.*

*Pittman v. Pittman*, 999 P.2d 638, 640 (Wyo. 2000).

■■■   [¶ 9]   When dividing marital property, the district court considers the factors set forth in Wyo. Stat. Ann. § 20–2–114 (LexisNexis 2009):

> In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children.   The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability to pay and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.

The district court has discretion to determine what weight should be given each of these individual factors, and to divide the property as appropriate to the individual circumstances of each case. *Carlton v. Carlton*, 997 P.2d 1028, 1032 (Wyo.2000).

> The justness and fairness of a marital property division cannot be gauged with a simple comparison of the amount of property awarded to each party.   Rather, the disposition should be performed with regard to the respective merits of the parties, the condition in which they will be left by the divorce, the party through whom the property was acquired, and the burdens imposed upon the property for the benefit of either party.

*Carter–Wallop v. Wallop*, 2004 WY 46, ¶ 36, 88 P.3d 1022, 1032 (Wyo.2004).   The goal in dividing marital property upon divorce is to reach an equitable result.

### DISCUSSION

■■   [¶ 10]   While the divorce was pending, Ms. Zaloudek sought permission from the district court to take some of the hay stored at the Evanston property to feed the two horses she was keeping.   Mr. Zaloudek objected, arguing that he was already bearing an unjust burden of expenses, and that Ms. Zaloudek had persistently violated the court's orders by coming onto the Evanston property and taking items of personal property.   After a hearing held by telephone, the district court denied Ms. Zaloudek's request for permission to take the hay but, instead, ordered Mr. Zaloudek to pay for hay to be purchased from another source.   Mr. Zaloudek filed a motion asking the district court to reconsider its ruling, claiming that the payment of money was relief that had not been sought by Ms. Zaloudek, and that the parties had presented no testimony or other evidence during the hearing to support the order.   The district court apparently chose to deny Mr. Zaloudek's motion to reconsider and, instead, issued the written order that had been prepared and submitted by Ms. Zaloudek.   On appeal, Mr. Zaloudek claims that the district court's decision was arbitrary and capricious, unsupported by the evidence, and contrary to law.

[¶ 11]   Mr.   Zaloudek   initially   contends that the district court erred in ordering him

to pay Ms. Zaloudek because she did not request that relief. The record does not support that assertion. In the motion, Ms. Zaloudek sought alternative forms of relief. First, she asked for permission to remove hay from the property. Alternatively, she requested payment for the costs of boarding the horses. The relief granted by the district court falls within this alternative request. Mr. Zaloudek had notice of this claim for relief and we find no error in the district court's consideration of this issue.

[¶ 12] Because the hearing on this motion was not reported, or otherwise recorded, it is nearly impossible for us to review the other challenges Mr. Zaloudek makes to the district court's order. In the absence of a transcript, we have no way to determine what evidence the district court considered during the hearing, and so our review is "greatly restricted." *Arnold v. Day*, 2007 WY 86, ¶ 9, 158 P.3d 694, 697 (Wyo.2007). Mr. Zaloudek attempted to fill this gap by moving to settle the record pursuant to W.R.A.P. 3.03. However, his request came more than a year after the hearing had been held, and a district court is not required to approve a statement of the evidence if it cannot recall the facts of a proceeding. *Feaster v. Feaster*, 721 P.2d 1095, 1097 (Wyo.1986). We are therefore left with no record of the hearing, and without a record, we must assume that the trial court had sufficient evidence to support its findings. *Willowbrook Ranch, Inc. v. Nugget Exploration, Inc.*, 896 P.2d 769, 771–72 (Wyo.1995). Similarly, we are unable to evaluate Mr. Zaloudek's claims of fundamental procedural errors that denied him due process, because no such errors are reflected in the record.

[¶ 13] The trial record contains evidence relating to the hay. The parties testified that a substantial amount of hay had been stored on the Evanston property when the Zaloudeks separated. Mr. Zaloudek said that he had sold some of this hay. Ms. Zaloudek presented evidence of the value of this hay, along with receipts for expenses she had incurred in caring for the two horses she

kept. This evidence is more than sufficient to support the conclusion that the hay was marital property, and that Mr. Zaloudek owed Ms. Zaloudek part of the money he received when he sold it.

[¶ 14] We also note that the challenged order required Mr. Zaloudek to pay Ms. Zaloudek a total of $2,800.00, in the context of a divorce in which the value of the marital estate exceeded $2,000,000.00. We review a district court's property division "from the perspective of the overall distribution of marital assets and liabilities, rather than from a narrow focus on the effects of any particular disposition." *Carlton*, 997 P.2d at 1032; *Sweat v. Sweat*, 2003 WY 82, ¶ 10, 72 P.3d 276, 279 (Wyo.2003).[1] Applying this perspective, we simply cannot deem the district court's order an abuse of discretion, contrary to law, or a denial of fundamental due process rights.

[¶ 15] Mr. Zaloudek's next issue relates to the district court's disposition of retirement assets. The district court ruled that all of the retirement assets should be divided equally between the two parties. Mr. Zaloudek challenges this decision. His arguments on this issue are somewhat difficult to follow, but we understand him to make two main points. First, he asserts that he should receive a greater share of the retirement assets because many of those assets were accumulated by him alone, not through the couple's joint efforts. Second, he contends that those portions of the retirement assets acquired prior to the marriage should not be considered marital property and should not be divided. Neither argument persuades us that the district court's decision to divide the retirement assets equally was an abuse of discretion.

[¶ 16] Although one statutory factor to be considered in dividing property in a divorce is "the party through whom the property was acquired," Wyo. Stat. Ann. § 20–2–114, previous cases have established that a party is not automatically entitled to all of that property. For example, in *Humphrey*

---

1. It is on this same basis that we decline to address in detail many of the minor complaints in Mr. Zaloudek's brief.

*v. Humphrey,* 2007 WY 72, ¶ 12, 157 P.3d 451, 454 (Wyo.2007), the property divided by the court included a business interest given to the husband by his parents. The husband objected, asserting that this property was "not a product of the marital union." *Id.* We rejected that argument because, pursuant to Wyo. Stat. Ann. § 20–2–114, "all property of the parties is subject to distribution." *Id.,* ¶ 13, 157 P.3d at 454. We upheld the district court's decision to divide the business interest as part of the marital estate. To similar effect, in *Breitenstine v. Breitenstine,* 2003 WY 16, 62 P.3d 587 (Wyo.2003), we upheld a decree granting the wife one half of the marital estate, even though the property was largely from gifts and inheritance received from the husband's parents. Under Wyoming law, all of the Zaloudek's property was subject to equitable division upon divorce, and Mr. Zaloudek was not entitled to a larger portion of the couple's retirement assets just because he had earned more money than Ms. Zaloudek.

[¶ 17] Mr. Zaloudek also asserts that some of the retirement assets were acquired before the marriage, and therefore not part of the marital estate. This argument has merit, but the difficulty is that neither party provided any evidence of the value of the retirement assets at that earlier date. The record suggests that the parties were unsuccessful in obtaining this evidence, even though subpoenas were issued to the asset managers. Without evidence of the value of the retirement assets at the earlier date, the district court had no basis for excluding the pre-marital portion from division. The district court's refusal to speculate was not unreasonable, and was not an abuse of discretion.

[¶ 18] Mr. Zaloudek insists that the value of the retirement assets as of the date of the marriage should have been established by applying what he calls a "marital fraction." Mr. Zaloudek began acquiring retirement assets in 1973 when he began his employment with the airline. By the time of the divorce trial in 2008, he had owned these assets for thirty-five years. Seventeen of those years, or approximately 49%, were prior to his marriage to Ms. Zaloudek. Eighteen of those years, or approximately 51%, were after the marriage. On this basis, he claims that the district court should have considered 49% of his retirement assets as pre-marital property to be retained solely by him, and 51% of the retirement assets as marital property to be divided between the parties.

[¶ 19] This "marital fraction" method was used by an expert witness for Ms. Zaloudek during the divorce trial to establish a present value of Mr. Zaloudek's continuing pension payments. Mr. Zaloudek now claims that it was error for the district court not to apply this method to all of the retirement assets. However, the expert witness made it clear that he used this method only for the continuing pension payments, and explicitly stated that the method should not be applied to the other retirement assets. The district court did not abuse its discretion when it heeded the expert's testimony and declined to apply the "marital fraction" to the other retirement assets. In addition, experience indicates that a person's retirement accounts are worth substantially less in the early years of a career, and because of compound interest and continuing contributions, are worth substantially more in later years. The "marital fraction" method advocated by Mr. Zaloudek does not account for these changes in value over time. For this reason as well, we cannot conclude that the district court abused its discretion in declining to use the "marital fraction" method to estimate the pre-marital value of the retirement assets.

[¶ 20] The divorce decree reflects that the district court considered the statutory factors. It found that "most of the assets have been acquired during the marriage and ... that those assets have appreciated during the marriage." The court determined that "an equitable distribution merits an equal distribution of the parties' assets and liabilities." It further found that "an equal division of the parties' assets would adequately allow each party to have sufficient income with which to support his or her individual living expenses." These findings and conclusions are sufficiently supported by the evidence of record, and are not so unfair

or inequitable as to constitute an abuse of discretion.

[¶ 21] As a final objection, Mr. Zaloudek asserts that the district court did not follow proper procedure when it entered the divorce decree. He complains that the district court adopted the proposed divorce decree submitted by Ms. Zaloudek, without allowing Mr. Zaloudek an opportunity to approve the order as to form or to assert any objections. Mr. Zaloudek claims that this violated W.R.C.P. 58(a).

[¶ 22] His reliance on W.R.C.P. 58(a) is misplaced. That rule, in pertinent part, provides as follows:

> Presentation.... [U]nless otherwise ordered by the court, written judgments or orders shall be presented to the court within 20 days after its decision is made known. Before submitting the judgment or order, the party drafting it shall seek to secure the written approval as to form of the other parties. If, within 10 days, approval as to form is not obtained, the party drafting the form of judgment or order may forward the original to the court and serve a copy on the other parties with a notice advising objections must be made within 10 days. If no written objection is timely filed, the court may sign the judgment or order. If objection is filed, the court will resolve the matter with or without a hearing. A party objecting shall submit an alternative form of judgment or order with the objection.

This procedure is commonly used when the court orally announces a decision and asks one of the parties, usually the prevailing party, to draft an order reflecting that decision. That is not what happened in the Zaloudek's divorce, and accordingly, the rule does not apply here. The district court did not announce a decision at the end of the Zaloudek's divorce trial, and did not ask one of the parties to submit an order. Instead, it directed both parties to submit proposed divorce decrees. Both parties did so. In this way, the district court was reminded or made aware of the positions, arguments, and objec-

tions of both parties. We find no violation of W.R.C.P. 58(a).

[¶ 23] We affirm.