2012 WY 78

**In the Matter of the ADOPTION OF SDL, AJL and GASL, Minor Children.**

**SL, Appellant (Respondent),**

v.

**CAD, Appellee (Petitioner).**

**No. S–11–0268.**

Supreme Court of Wyoming.

June 4, 2012.

---

Representing Appellant: Pro se.

Representing Appellee: Farrah L. Spencer, Long, Reimer, Winegar, Beppler, LLP, Park City, Utah.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   Father, SL, resisted the petition by Stepfather, CAD, to adopt SL's three youngest children.  The district court approved the adoption over SL's objections, and SL appeals.  We will affirm.

### ISSUES

[¶ 2]   Father, who appears *pro se* in this appeal as he did in the district court, lists several issues.  We summarize and reorganize them as follows:

1.   Did the district court err in calculating the arrearages in Father's child support payments?

2.   Did the district court misapply Wyo. Stat. Ann. § 20–2–304(e) (LexisNexis 2011) by failing to give Father credit for social security payments made directly to Mother as child support?

3.   Did the district court err in finding Stepfather "fit and competent" to adopt the children?

4.   Did the district court err in failing to consider information contained in Father's answer to the petition for adoption, in Father's proposed findings of fact following the hearing in this matter, and in a letter sent to the court by Stepfather's attorney after the hearing?

5.   Did the district court err in denying Father's motions for visitation with the children?

Stepfather presents this statement of the issue: Did the district court abuse its discretion when it granted the petition for adoption?

### FACTS

[¶ 3]   Father and Mother were divorced in Colorado in 2008.  Six children had been born of the marriage.  Mother was granted custody of the children, and Father was ordered to pay $686.00 per month for child support.  Mother married Stepfather in 2009, and the couple moved to Wyoming with the three youngest children.  By that time, the oldest child had joined the military.  The second child remained in Colorado, living with the family of a friend.  The third child moved into Father's home.

[¶ 4]   In 2011, Stepfather filed a petition with the district court to adopt the three youngest children.  Mother consented to the adoption.  The petition alleged that Father's consent was not required because he had willfully failed to satisfy his child support obligations.  Father responded to the petition for adoption, disputing that he was in arrears with his child support payments, and raising several other issues.

[¶ 5]   The district court held a hearing on the matter on September 22, 2011.  It heard

testimony from Stepfather, Mother, Father, Father's brother, and the third child. The district court later issued an order granting Stepfather's petition for adoption. Father has appealed from that order.

## STANDARD OF REVIEW

[¶ 6] We have consistently said that, if all statutory elements are met, the power to grant or deny a petition for adoption is within the sound discretion of the district court. *In re Adoption of RMS*, 2011 WY 78, ¶ 7, 253 P.3d 149, 151 (Wyo.2011). We will not disturb a district court's decision absent a clear abuse of discretion. *In re Adoption of KJD*, 2002 WY 26, ¶ 21, 41 P.3d 522, 527 (Wyo.2002). In determining whether there has been an abuse of discretion, the ultimate question is whether the court could reasonably have concluded as it did. *Id.*

## DISCUSSION

[¶ 7] Wyo. Stat. Ann. § 1–22–110(a), in pertinent part, allows the adoption of a child without the written consent of the parent:

if the court finds that the putative father or the nonconsenting parent or parents have: ...

(ix) Willfully failed to pay a total dollar amount of at least seventy percent (70%) of the court ordered support for a period of two (2) years or more and has failed to bring the support obligation one hundred percent (100%) current within sixty (60) days after service of the petition to adopt.

It is undisputed that, upon his divorce from Mother, Father was ordered to pay $686.00 per month in child support. The district court, in its order, included these findings of fact:

16. [Father] stipulated to not having personally paid child support to Mother for the support of the minor children. [Father's] argument at the hearing was that the social security payments received by Mother on behalf of the minor children

should be considered child support payments and therefore he has not willfully [failed to pay] child support.

17. [Father] is 67 years old and began receiving social security payments two (2) years ago. Because [Father] was divorced from Mother and Mother had custody of their children, a portion of the social security payments were paid to Mother. Mother receives $94.00 per month for each child under the age of majority for a total monthly sum of $376.00.[1] ...

34. The Court finds that pursuant to Wyo. Stat. § 20–2–304(e), [Father] should receive a credit for the social security benefit sent directly to the custodial parent, [Mother].

35. [Father] should receive a credit of $376.00 per month towards his child support obligation of $686.00 per month.

36. The Court finds that at the time of the hearing, [Father] was in arrears in his child support obligation in the amount of $10,540.00 ($310 × 34 months).

37. The Court finds that 70% of the court ordered child support amount is $480.00 per month.

38. The Court finds that [Father] has willfully failed to pay a total dollar amount of at least seventy percent (70%) of the court ordered support for a period of two years or more and has failed to bring the support obligation one hundred percent (100%) current within sixty days after being served with the Petition for Adoption.

39. The Court finds that [Father's] consent to the adoption is not required.

[¶ 8] On appeal, Father contends that these findings are in error. His position is that he was ordered to pay child support of $686.00 per month for the six children, or $114.33 per month per child. He argues that his child support obligation was reduced by $114.33 when his oldest child became emancipated upon joining the military, by another $114.33 when his second child reached the age of majority or stopped living with Moth-

---

1. Although there are six children, Mother did not receive social security payments for the two oldest children after they reached the age of majority. Mother received social security payments for the four youngest children, even though one of them was living with Father. 4 × $94.00 = $376.00.

er, and by another $114.33 when his third child stopped living with Mother and started living with him. On that basis, Father insists that his child support obligation had been reduced to $114.33 per month for each of the three youngest children living with Mother, for a total of $343.00 per month. Because Mother received social security payments of $376.00 per month, Father asserts that his child support payments exceeded his obligation, and that Mother actually owed him money.

■■■ [¶ 9] Our consideration of Father's argument is severely hampered by the fact that the hearing on this matter was not transcribed or reported. The question before us is whether the district court abused its discretion because it could not reasonably have ruled as it did. "Absent a transcript or a statement of the evidence, we must presume the district court had a reasonable evidentiary basis for its decision." *Montoya v. Navarette–Montoya,* 2005 WY 161, ¶ 8, 125 P.3d 265, 269 (Wyo.2005), citing *Burt v. Burt,* 2002 WY 127, ¶ 7, 53 P.3d 101, 103 (Wyo. 2002). "In the absence of anything to refute them, we will sustain the trial court's findings, and we assume that the evidence presented was sufficient to support those findings." *Willowbrook Ranch, Inc. v. Nugget Exploration, Inc.,* 896 P.2d 769, 771–72 (Wyo.1995). On this basis alone, we could decline to consider Father's argument, or summarily affirm the district court's decision. *See BB v. RSR,* 2007 WY 4, ¶ 7, 149 P.3d 727, 731 (Wyo.2007).

■■ [¶ 10] We are reluctant to do that, however, because of the significant interests at stake. The "determination by the district court that [Father's] consent to adopt was not required effectively terminated his parental rights." *In re Adoption of RHA,* 702 P.2d 1259, 1264 (Wyo.1985). We "strictly scrutinize petitions to terminate parental rights" because "the right to associate with one's family is fundamental." *JLW v. CAB,* 2010 WY 9, ¶ 17, 224 P.3d 14, 19 (Wyo.2010). Because Father's parental rights are involved here, we will exercise our discretion to consider his argument to the extent possible in the absence of a record. *Compare BB,* ¶ 9, 149 P.3d at 732 ("In light of the impor-

tant interests at stake," we reviewed the matter "in the exercise of our discretion" despite the lack of an official transcript of the hearing.).

[¶ 11] Initially, we must consider whether the district court correctly calculated Father's child support obligations and arrearages. Father and Mother were divorced in Colorado, and his obligation to pay child support was imposed by a Colorado court. We therefore determine the child support arrearages by applying Colorado law. *See Witowski v. Roosevelt,* 2009 WY 5, ¶ 19, 199 P.3d 1072, 1077 (Wyo.2009). The Colorado court ordered Father to pay a lump sum of $686.00 per month in child support, not $114.33 per month per child. Under established Colorado law,

> When a divorce decree directs the father to pay a specified amount periodically for the joint benefit of more than one minor child, the emancipation of one of such children does not automatically affect the liability of the father for the full sum prescribed by the order. Rather it becomes the burden of the father, if he so desires, to make such showing as would entitle him to be relieved of all or a part of such obligation.

*Taylor v. Taylor,* 147 Colo. 140, 145, 362 P.2d 1027, 1029 (1961). *See also Ferguson v. Ferguson,* 32 Colo.App. 145, 148–49, 507 P.2d 1110, 1111–12 (1973); *In re Marriage of Schmedeman,* 190 P.3d 788, 792–93 (Colo. App.2008).

[6, 7] [¶ 12] It is undisputed that Father was ordered to pay "a specified amount periodically for the joint benefit of more than one minor child." Under the Colorado precedent cited above, he is therefore incorrect in asserting that the emancipation of his oldest child automatically reduced his child support obligation. *See also* Colo.Rev.Stat. § 14–10–115(13)(a) ("[U]nless a court finds that a child is otherwise emancipated, emancipation occurs and child support terminates without either party filing a motion when **the last or only child** attains nineteen years of age." (emphasis added)). Similarly, Father's child support obligation was not automatically reduced when his second child stopped living with Mother, or when his third child started

living with him instead of Mother. Under Colorado law, "a mutually agreed change of physical care" may provide grounds for a court to modify child support obligations, but the modification does not occur automatically without a court order. *In re Marriage of White*, 240 P.3d 534, 538 (Colo.App.2010). It is undisputed that Father's child support obligation had not been modified at the time the adoption decree was entered.[2]

[¶ 13] We therefore reject Father's argument that his child support obligations were automatically reduced by the emancipation or change of custody of the three oldest children. It is undisputed that Father was obligated to pay $686.00 per month in child support. Even though Father may be credited with the $376.00 per month social security payments, $376.00 is only approximately fifty-five percent of the $686.00 child support obligation. The district court did not err, therefore, in ruling that Father was more than seventy percent in arrears on his child support payments, and that he had not brought the support current within sixty days of being served with the petition to adopt. Pursuant to Wyo. Stat. Ann. § 1–22–110(a)(ix), Father's consent to the adoption was not required.

[¶ 14] This discussion also effectively resolves Father's second issue. It is apparent from the order quoted above that the district court did apply the statutory provisions of Wyo. Stat. Ann. § 20–2–304(e), and did give Father credit for the social security payments. Father's assertions to the contrary are simply incorrect.

[¶ 15] Father also challenges the fitness and competency of Stepfather to adopt the children. Wyo. Stat. Ann. § 1–22–103 provides that only a person "who is determined by the court to be fit and competent to be a parent may adopt in accordance with this act." Father alleges, on several different grounds, that Stepfather is unfit and incompetent to be a parent. Again, our review is hampered by the lack of a record on appeal,

but we are told in Father's brief that the district court "was informed of all this information, and, in spite of this knowledge deemed [Stepfather] 'fit and competent.'" Father's argument implicitly concedes that the district court weighed the evidence and considered the arguments, but was unconvinced by Father's allegations. Because there is no transcript or statement of the evidence for us to review, we must defer to the district court and presume it "had a reasonable evidentiary basis for its decision." *Montoya*, ¶ 8, 125 P.3d at 269. We cannot conclude that the district court abused its discretion.

[¶ 16] As a related matter, Father complains that the district court failed to order an investigation of the background of Stepfather pursuant to Wyo. Stat. Ann. § 1–22–111(a)(ii). That statute provides as follows:

(a) After the petition to adopt has been filed and a hearing held the court acting in the best interest and welfare of the child may make any of the following orders:

(i) Enter an interlocutory decree of adoption giving the care and custody of the child to the petitioners pending further order of the court;

(ii) Defer entry of an interlocutory decree of adoption and order the department of family services or a private licensed agency to investigate and report to the court the background of the child and of the petitioners, and the medical, social and psychological background and status of the consenting parent and putative father. After a written report of the investigation is filed, the court shall determine if the adoption by petitioners is in the best interest and welfare of the child and thereupon enter the appropriate order or decree;

(iii) Enter a final decree of adoption if the child has resided in the home of the petitioner for six (6) months; or

---

2. Attached to Father's brief is an order from a Colorado court modifying his child support obligations. Although it is not technically a part of the record on appeal, we note that it was dated December 27, 2011, more than two months after the Wyoming district court entered the adoption decree. Of particular significance to the case before us now, the order also confirmed that Father was more than $10,000.00 in arrears in his child support payments.

(iv) Deny the adoption if the court finds that the best interests and welfare of the child will be served by such denial.

Applying the plain language of this statute, it is apparent that ordering an investigation of the petitioner is only one of the options the district court may choose. It is undisputed in this case that the three youngest children had resided with Stepfather and Mother for more than six months. The district court chose to enter the adoption decree rather than order an investigation, and that decision was not an abuse of discretion.

[¶ 17] Father further contends that the district court failed to consider information contained in Father's answer to the petition for adoption and in Father's proposed findings of fact following the hearing in this matter. Father does not designate any specific information to which this argument applies. As to the general information in these documents, the order in this case makes it plain that the district court duly considered Father's pleadings and arguments but, based on the evidence, found Stepfather's arguments more compelling.

[¶ 18] Moreover, with regard to Father's proposed findings of fact, we have previously observed that a district court may require both parties to submit proposed findings, conclusions, and orders so that the court will be "reminded or made aware of the positions, arguments, and objections of both parties." *Zaloudek v. Zaloudek*, 2009 WY 140, ¶ 22, 220 P.3d 498, 504 (Wyo.2009). Upon receiving the proposed orders, however, the court may reject one party's order in its entirety and adopt the other party's "nearly verbatim." *Id.*, ¶ 7, 220 P.3d at 501. The district court did not abuse its discretion when it declined to accept Father's proposed findings.

[¶ 19] Father also argues that the district court erred by failing to consider information contained in a letter written to the court by Stepfather's attorney after the hearing. Although that letter has not been designated as part of the record, Father indicates that the main point of the letter was that Father "was correct in his assertion that he should be given credit for the social security benefits being received by his ex-wife." As previous- ly discussed, the district court's final order in this case demonstrates that Father was given credit for these social security payments.

[¶ 20] Finally, Father requests that custody of the three minor children be given to him, but if not, he "prays" that we grant "reasonable visitation to the natural father and sibling brother [the third child]." As stated earlier, the "determination by the district court that [Father's] consent to adopt was not required effectively terminated his parental rights." *RHA*, 702 P.2d at 1264. Father suggests no legal basis for granting visitation to a biological father whose parental rights have been terminated. The question of the brother's right to visitation with his siblings is simply not before us in this case, and we decline to consider it.

[¶ 21] The district court's decision is affirmed.